UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

AL HEYDARIAN,

     Plaintiff,                      NO. CIV. S-06-2234 LKK/KJM

    v.                                      O R D E R

AGILENT TECHNOLOGIES, INC.,
INCOME PROTECTION PLAN, VPA,
INC., and DOES 1 to 100,

     Defendants.
_____/

    Plaintiff Al Heydarian has brought suit against defendants Agilent Technologies, Inc. Income Protection Plan and VPA, Inc. for benefits under Section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 502(a)(1)(B). Pending before the court is defendants' motion for summary judgment, which argues that plaintiff failed to exhaust his administrative remedies. The court resolves the matter based upon the papers and after oral argument. The court denies summary judgment on the grounds either that defendants have failed to rebut the presumption

that plaintiff timely mailed his appeal or that, even if they have, there is still a genuine dispute as to whether the appeal was timely received. The court also remands the matter to the plan administrator.

## I. Facts[1]

Plaintiff Al Heydarian was hired by Agilent Technologies in 1978 and worked there until October 2001. Pl.'s Statement of Disputed Fact ("SDF") ¶ 1. He enrolled in the Agilent Technologies, Inc. Income Protection Plan ("Plan"), which is a disability plan subject to ERISA, on or before May 1, 2000. Defs.' Statement of Undisputed Fact ("SUF") ¶ 1. In July 2000, plaintiff was diagnosed with cancer and began chemotherapy soon thereafter. SDF ¶ 8. Plaintiff maintains that he terminated his employment in October 2001 due to continuing health issues. SDF ¶ 11.

Plaintiff timely filed a claim for disability benefits under the plan. SDF ¶ 5. Plaintiff's claim was initially approved and his benefits were paid until October 1, 2002. Id. Based on an August 8, 2002 functional capacity evaluation, however, VPA -- the plan's administrator and named fiduciary -- determined that plaintiff did not meet the plan's definition of disabled. SUF ¶¶ 2, 13. The plan confers discretion on VPA when making benefit determinations. SUF ¶ 4. Defendants notified plaintiff by letter dated September 6, 2002 that his benefits were to be discontinued.

---

[1] The facts are undisputed unless otherwise noted.

1  SUF ¶ 14.

2       The letter also stated that, pursuant to the terms of the
3  plan, the decision on plaintiff's claim could be appealed by
4  submitting a written request within 180 days after the date of
5  termination, and that the failure to submit a timely appeal would
6  extinguish plaintiff's ability to later file suit in court. SUF
7  ¶ 14. Defendants assert that they have no record that plaintiff
8  submitted a timely appeal. SUF ¶ 15. Defendants maintain that had
9  anyone at VPA received an appeal, that person would have lodged its
10 receipt in plaintiff's claims file case notes. SUF ¶ 16.[2] Those
11 case notes, however, do not indicate that a timely appeal was
12 received. SUF ¶ 17. Both the claims adjudicator and appeals
13 manager assigned to plaintiff's claim have also stated that they
14 did not receive a timely appeal from plaintiff. SUF ¶ 18.[3]

15      Plaintiff, however, represents that he wrote and mailed a
16 letter to defendants on September 20, 2002 appealing his denial of
17 benefits. SDF ¶ 13. A copy of that letter is attached to his
18 declaration. It reads, in relevant part: "Please review the
19 physical test results again and see if you can reinstate my
20 benefits." Decl. of Al Heydarian, Ex. 1. It is not clear that
21 plaintiff understood this letter as constituting an "appeal" at the
22 time that he wrote it.

---

24   [2] Defendants' confidence in the efficacy of their filing system, while evidence, is hardly determinative.

26   [3] Once again, it appears unlikely that the adjudicator or appeals manager have independent recollection of plaintiff's file. What they most likely mean is no appeal is found in the file.

3

On March 22, 2006, plaintiff retained his present attorney to pursue his denial of benefits. SDF ¶ 21. Plaintiff's counsel was initially unaware of the September 2002 letter. Counsel states that his client's medical condition made communication difficult,[4] and notes that the letter was not contained in the file sent to him by VPA. Accordingly, counsel submitted an administrative appeal in July 2006 -- which, unbeknownst to him at the time, was arguably a second appeal. The plan administrator denied the July 2006 appeal as untimely. SUF ¶ 22. The parties' joint December 29, 2006 status report also stated that due to his medical problems, "Plaintiff was prevented from filing a timely administrative appeal under the plan." When plaintiff's counsel ultimately discovered the September 20, 2002 appeal letter, he informed defendants' counsel of its existence.

## II. Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and

---

[4] Indeed, counsel states that he has never met plaintiff and instead communicates by telephone, email, and mail; when plaintiff is experiencing a "good day," he contacts counsel.

4

>     identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Secor Ltd., 51 F.3d at 853.

In attempting to establish the existence of this factual

1  dispute, the opposing party may not rely upon the denials of its
2  pleadings, but is required to tender evidence of specific facts in
3  the form of affidavits, and/or admissible discovery material, in
4  support of its contention that the dispute exists.  Fed. R. Civ.
5  P. 56(e); Matsushita, 475 U.S. at 586 n.11; see also First Nat'l
6  Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954 (9th Cir.
7  1998).  The opposing party must demonstrate that the fact in
8  contention is material, i.e., a fact that might affect the outcome
9  of the suit under the governing law, Anderson v. Liberty Lobby,
10 Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169, Ass'n of
11 Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992)
12 (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,
13 809 F.2d 626, 630 (9th Cir. 1987)), and that the dispute is
14 genuine, i.e., the evidence is such that a reasonable jury could
15 return a verdict for the nonmoving party, Anderson, 477 U.S. 248-
16 49; see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200
17 F.3d 1223, 1228 (9th Cir. 1999).

18     In the endeavor to establish the existence of a factual
19 dispute, the opposing party need not establish a material issue of
20 fact conclusively in its favor.  It is sufficient that "the claimed
21 factual dispute be shown to require a jury or judge to resolve the
22 parties' differing versions of the truth at trial."  First Nat'l
23 Bank, 391 U.S. at 290; see also T.W. Elec. Serv., 809 F.2d at 631.
24 Thus, the "purpose of summary judgment is to 'pierce the pleadings
25 and to assess the proof in order to see whether there is a genuine
26 need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R.

1  Civ. P. 56(e) advisory committee's note on 1963 amendments); see
2  also Int'l Union of Bricklayers & Allied Craftsman Local Union No.
3  20 v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).
4  　　　In resolving the summary judgment motion, the court examines
5  the pleadings, depositions, answers to interrogatories, and
6  admissions on file, together with the affidavits, if any.  Rule
7  56(c); see also In re Citric Acid Litig., 191 F.3d 1090, 1093 (9th
8  Cir. 1999).  The evidence of the opposing party is to be believed,
9  see Anderson, 477 U.S. at 255, and all reasonable inferences that
10 may be drawn from the facts placed before the court must be drawn
11 in favor of the opposing party, see Matsushita, 475 U.S. at 587
12 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)
13 (per curiam)); see also Headwaters Forest Def. v. County of
14 Humboldt, 211 F.3d 1121, 1132 (9th Cir. 2000).  Nevertheless,
15 inferences are not drawn out of the air, and it is the opposing
16 party's obligation to produce a factual predicate from which the
17 inference may be drawn.  See Richards v. Nielsen Freight Lines, 602
18 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902
19 (9th Cir. 1987).
20 　　　Finally, to demonstrate a genuine issue, the opposing party
21 "must do more than simply show that there is some metaphysical
22 doubt as to the material facts. . . . Where the record taken as a
23 whole could not lead a rational trier of fact to find for the
24 nonmoving party, there is no 'genuine issue for trial.'"
25 Matsushita, 475 U.S. at 587 (citation omitted).
26 ////

**III. Analysis**

Where, as here, a benefit plan governed by ERISA confers discretion on its administrator, the court reviews the administrator's decision for abuse of discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Defendants move for summary judgment on the grounds that plaintiff failed to exhaust administrative remedies, and that the plan administrator's decision to deny his July 2006 appeal on grounds of untimeliness was therefore not an abuse of discretion.

"[A] claimant must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court." Diaz v. United Agr. Employee Welfare Ben. Plan and Trust, 50 F.3d 1478, 1483 (9th Cir. 1995). Although not required by statute, the exhaustion doctrine has been said to "serve[] several important policy considerations, including the reduction of frivolous litigation, the promotion of consistent treatment of claims, the provision of a nonadversarial method of claims settlement, the minimization of costs of claim settlement and a proper reliance on administrative expertise." Id.[5]

Whatever the value of the exhaustion doctrine, here, defendants have failed to conclusively prove that they did not receive plaintiff's September 2002 letter, which would likely

////
////

---

[5] That it also serves to defeat otherwise worthy claims appears not to have been considered significant.

8

constitute an appeal under the plan.[6] Plaintiff has submitted a copy of the letter and his affirmed statement that he mailed the letter to defendants on September 20, 2002. SDF ¶ 13. Under the mailbox rule, "a settled feature of federal common law," "the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee." <u>Schikore v. BankAmerica Supplemental Retirement Plan</u>, 269 F.3d 956, 961 (9th Cir. 2001). Indeed, "[t]he common law mailbox rule is consistent with the purposes of ERISA and applies to ERISA plans where receipt is a factual issue in dispute." <u>Id.</u>

Defendants respond that they have no evidence of receiving plaintiff's September 2002 appeal letter on file and that those responsible for recording such an appeal also have stated that no such appeal was ever received. Furthermore, they argue that the plan administrator's decision to deny the July 2006 appeal was not an abuse of discretion based on the information available to defendants at the time. But therein lies the rub: what information

---

[6] Defendants argue that plaintiff is bound by two admissions that he did not appeal until July 2006. The first purported admission, found in the complaint, simply states that "Plaintiff appealed his claim July 24, 2006," FAC ¶ 11, and does not state that the July appeal was the first or only appeal. The court declines to construe as binding the second purported admission, found in the status report, that plaintiff was "prevented from filing a timely administrative appeal under the plan." Admissions made outside pleadings "*may* be considered admissions of the party in the discretion of the district court." <u>Am. Title Ins. Co. v. Lacelaw</u>, 861 F.2d 224, 227 (9th Cir. 1988). Plaintiff's counsel, however, has provided sufficient reason to explain why he was initially unaware of the letter's existence. Defendants also do not dispute that plaintiff's counsel informed them about the letter once it was discovered.

was in fact available to defendants?

In Schikore, a case with substantially similar facts to the present case, the Ninth Circuit held that "it was an abuse of discretion for the [ERISA] Plan to fail to apply the long-established common-law rebuttable presumption that a letter mailed is received." 269 F.3d at 961. There, the plaintiff maintained that she had timely submitted a benefit payment election form, but defendants had no record of its receipt. Id. at 959. Significantly, as in the case at bar, the only evidence adduced by plaintiff was a sworn declaration that she mailed the form. Id. at 964. Nevertheless, the court noted that a sworn statement "is credible evidence of mailing for purposes of the mailbox rule." Id.

Schikore left unanswered the question of precisely what evidence a party must adduce to rebut the presumption of receipt in the context of ERISA. In a footnote, the court noted that a "specific factual denial of receipt" would be sufficient to rebut the presumption in a different context (whether a party is entitled to an extension of time to appeal where the would-be appellant claimed not to have received notice of the entry of judgment). Schikore, 269 F.3d at 964 n.7. But it also stated: "We are not certain that [this] approach to the application of the rule would apply outside the [time for appeal] context."[7] Id. The court did

---

[7] The court's hesitance was likely attributable to the fact that such an rule might run afoul of ERISA's stated purpose to "protect . . . the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b).

not reach the issue because it found that the plan had failed to produce a "specific factual denial of receipt," which "[a]t the very least [] requires a plan to describe in detail its procedures for receiving, sorting, and distributing mail." Id. at 964. Here, however, the same cannot be said. Defendants have tendered the declaration of a VPA claims adjudicator, which describes how mail was received, sorted, and distributed. Decl. of Linda Kennedy ¶ 5.

Nevertheless, this court also need not resolve whether a "specific factual denial of receipt" is sufficient to rebut the mailbox rule presumption. First, even if defendants have rebutted the presumption, there would still be a genuine dispute as to whether the appeal was actually received, and the court would deny summary judgment on that basis.

Second, while the plan administrator in Schikore was fully apprised of plaintiff's position that she had timely submitted her paperwork when it denied her administrative appeal, 269 F.3d at 960, here, defendants were not aware of the September 2002 letter until after litigation had commenced. Accordingly, the appropriate course of action would be to remand the matter to the plan administrator for reconsideration in light of the letter. See Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability Income Plan, 85 F.3d 455, 461 (9th Cir. 1996) (holding that remand to ERISA plan administrator is appropriate where the administrator has not yet had opportunity "to make [a] call in the first instance"). Indeed, unlike the parties in Schikore, this is

11

precisely the remedy requested by defendants.[8]

## IV. Conclusion

For the reasons explained above, defendants' motion for summary judgment is DENIED. The court REMANDS the case to the plan administrator to review plaintiff's September 2002 appeal. The clerks' office is directed to close the case.

IT IS SO ORDERED.

DATED: January 17, 2008.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[8] It also appears that, on remand, defendants are willing to construe the September 2002 letter as timely received but will only review medical information submitted up to that point in time. Plaintiff, however, argues that defendants must consider all information available to defendants (whether submitted or not) up to that point in time. That issue is not properly before the court and I pass no judgment on the merits of either position.

12